IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUANITA BROADAWAY,

    Plaintiff,

v.                                                                  Civil Action No.: GLR-19-2805

DR. GREENWAY and
AMINATA JALLOH,[1]

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Aminata Jalloh's Motion to
Dismiss or, Alternatively, for Summary Judgment.[2] (ECF No. 10). The Motion is ripe for
disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the
reasons set forth below, the Court will grant the Motion.

## I.      BACKGROUND[3]

At all times relevant to the Complaint, Plaintiff Juanita Broadaway was incarcerated
at Maryland Correctional Institution for Women ("MCIW").[4] Without identifying her
medical condition, Broadaway alleges she was "a victim of neglect" and that, had she

---

[1] The Court will direct the Clerk to amend the docket to reflect the correct name of
Defendant Aminata Jalloh consistent with the above case caption.

[2] Also pending before the Court is Plaintiff Juanita Broadaway's Motion for Leave
to Proceed in Forma Pauperis (ECF No. 5) and Jalloh's Motions for Extension of Time
(ECF Nos. 7, 9). The Court will grant these Motions.

[3] Unless otherwise noted, the Court takes the following facts from Broadaway's
Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(citations omitted).

[4] Broadaway was released while this case was pending.

received the proper diagnosis, she would not have needed surgery. (Compl. at 3, ECF No. 1).[5] Broadaway characterizes her condition as "extremely dire," alleging that she suffered "severe pain" and that her life was jeopardized because Defendant Aminata Jalloh, MCIW's Health Services Administrator, failed to "review the medical team's diagnosis" and did not speak with Broadaway concerning her condition. (Id.). Broadaway also alleges that Defendant Dr. Greenway "did not provide any treatment" and failed to respond to her medical needs. (Id. at 4).

Broadaway's medical records indicate that she first sought care for an insect bite on her left thigh and right hip on April 5, 2019 and was seen by nurse practitioner Della Sangah. (Def.'s Mot. Dismiss Summ. J. Ex. A-1 ["Medical Records"] at 75–76, 89, ECF No. 10-5). Sangah prescribed Broadaway two antibiotics to treat the infected areas, which were identified as "cellulitis/abscess." (Id. at 76). Two days later, Broadaway went back to the medical unit because she was experiencing pain and negative side-effects related to the antibiotics. (Id. at 31, 74). Broadaway's "wound care was addressed," and she received a pass to return to the medical unit for follow-up care. (Id. at 74).

On April 9, 2019, Dr. Jaya Singh saw Broadaway for her complaints of painful swelling on her left thigh, nausea, and vomiting. (Medical Records at 72–73). The abscess on her left thigh had enlarged, and Dr. Singh, in consultation with another doctor, determined that Broadaway should be transported to a hospital emergency room for an

---

[5] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

incision and drainage procedure. (Id.). MCIW transported Broadaway to Bon Secours Hospital that day, and she underwent the procedure on April 10, 2019. (Id. at 90, 106). Broadaway was administered an intravenous antibiotic and the wound was cultured. (Id. at 106). The culture results showed Broadaway had a MRSA infection. (Id.).

Broadaway's surgeon cleared her for discharge on April 15, 2019 with orders for intravenous antibiotics for one week followed by oral antibiotics. (Medical Records at 108–110). Broadaway returned to MCIW that day and was admitted to the infirmary. (Id. at 63–66). From April 15, 2019 through April 18, 2019, Broadaway received Tylenol with codeine for pain management. (Id. at 57). Broadaway's course of healing was described as "uncomplicated," and her medical records do not indicate that she was in acute distress while in the infirmary. (See id. at 36–62). Further, none of Broadaway's post-surgery examinations revealed signs of infection. (Id.). She was discharged from the infirmary and transferred back to general population on April 22, 2019. (Id. at 36).

Following her discharge from the infirmary, Broadaway filed a grievance on April 26, 2019 regarding the size of bandages available from the medical unit and again on June 16, 2019, expressing dissatisfaction with the treatment she received.[6] (Compl. Ex. ["Inmate Records"] at 51–54, ECF No. 1-6).[7]

On September 24, 2019, Broadaway, proceeding pro se, filed a Complaint against Jalloh and Dr. Greenway, alleging violation of her Eighth Amendment rights and seeking

---

[6] Broadaway does not identify how, if at all, these grievances were resolved.

[7] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

unspecified monetary damages and "proper action" against Defendants.[8] (Compl. at 3, 5).

On February 5, 2020, Jalloh filed a Motion to Dismiss or, Alternatively, for Summary

Judgment. (ECF No. 10). On March 5, 2020, Broadaway filed a Supplemental Complaint,

attempting to add unrelated medical and dental claims.[9] (ECF No. 11). Jalloh filed an

Opposition to Broadaway's Supplemental Complaint on March 10, 2020. (ECF No. 12).

On April 6, 2020, Broadaway filed a "Supplement to the Facts," which the Court construes

as an Opposition to Jalloh's Motion. (ECF No. 13). On April 14, 2020, Jalloh filed a Reply.

(ECF No. 15).

---

[8] Service of process was never accepted on behalf of Dr. Greenway because no current or former Corizon Health employee by that name could be located. (See Notice, ECF No. 8). Further, Broadaway's medical records do not identify Dr. Greenway as one of Broadaway's treating physicians. (Id.). Accordingly, the Complaint against Dr. Greenway will be dismissed.

[9] The Court will not consider the allegations raised in Broadaway's Supplemental Complaint because they concern claims unrelated to the Defendants or to Broadaway's abscess diagnosis and treatment. See, e.g., Tarpley v. Stouffer, No. CIV.A. GLR-13-522, 2014 WL 768838, at *1 n.1 (D.Md. Feb. 21, 2014) (declining to consider plaintiff's supplemental complaint because it contained "claims unrelated to the matters asserted in [the] case") (emphasis in original).

## II.    DISCUSSION

**A.    Standard of Review**[10]

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint,"
not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of
defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City
of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it
does not contain "a short and plain statement of the claim showing that the pleader is
entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible
on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.
Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).
"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[10] The Court considered Broadaway's complete medical records, which were
attached to Jalloh's Motion. The general rule is that a court may not consider extrinsic
evidence when resolving a Rule 12(b)(6) motion. <u>See</u> <u>Chesapeake Bay Found., Inc. v.
Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general
rule is subject to several exceptions. Of relevance here is the exception allowing a court to
consider documents attached to the motion to dismiss, so long as they are integral to the
complaint and authentic. <u>See</u> <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir.
2006). Broadaway's medical records are integral to her Complaint, which alleges an Eighth
Amendment violation against Jalloh for failure to supervise her medical care, and their
authenticity is supported by a certificate from MCIW's custodian of records. (<u>See</u> Medical
Records at 1). The Court notes that several pages from Broadaways's medical records were
also attached to Broadaway's Complaint. <u>Compare</u> Medical Records at 96–100 <u>with</u>
Inmate Records at 3–7. However, the Court declines to consider the affidavit submitted in
support of Jalloh's Motion, as it summarizes most of Broadaway's medical records and is
not necessary to the resolution of this Motion.

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Where, as here, the plaintiff is proceeding pro se, her pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

B.     **Analysis**

Broadaway asserts that she suffered cruel and unusual punishment in violation of the Eighth Amendment because her treating physician failed to properly diagnose and treat her infection, and Jalloh did nothing to correct the alleged failure. In so alleging, Broadaway attempts to state a 42 U.S.C. § 1983 claim for denial of medical care.

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a "person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). A defendant may not be held liable under § 1983 unless the defendant "acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Anderson v.

Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). The United States Supreme Court has recognized that denial of medical care constitutes cruel and unusual punishment because "in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without penological purpose." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle, 429 U.S. at 106; see also Kingsley, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–210 (4th Cir. 2017); Rubenstein, 825 F.3d at 218; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (concluding there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Heyer, 849 F.3d at 210 (quoting Iko, 535 F.3d at 241); see also Stansberry, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

8

The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Brennan, 511 U.S. at 839–40; Kingsley, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" Kingsley, 877 F.3d at 545 (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)); see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflict[o]r . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Stansberry, 841 F.3d at 226 (quoting Farmer, 511 U.S. at 842).

Broadaway seeks to hold Jalloh accountable for the alleged constitutional violation under respondeat superior. However, it is well-established that the doctrine of respondeat superior does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the

constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to the plaintiff; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there is "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).

Broadaway's Complaint fails to allege facts establishing supervisory liability as to Jalloh. First, it is unclear from the Complaint if Jalloh even exercised supervisory authority over the individuals who treated Broadaway. Second, even if Jalloh exercised such authority, Broadaway's Complaint fails to establish a constitutional violation.

The Complaint consists of unsubstantiated, conclusory allegations that medical personnel at MCIW acted with "deliberate indifference" to Broadaway's medical needs by refusing to treat her and misdiagnosing her condition, and that Jalloh was aware but "failed to take proper action to endorse and ensure [her] health and well-being." (Compl. at 3–4). Broadaway further asserts that "all MCIW medical transactions are to be verified by [Jalloh]," and that Jalloh "did not make a conscious effort" to help her. (Id. at 3). However, these allegations are neither entitled to a presumption of truthfulness nor sufficient to state a claim for denial of medical care. See Iqbal, 556 U.S. at 681 (noting that "bare assertions"

and "formulaic" recitations of elements of claims are conclusory and thus not entitled to be assumed true when a court is deciding whether to dismiss for failure to state a claim); see also Estelle, 429 U.S. at 106 (finding that mere negligence, malpractice, or incorrect diagnosis are not actionable under § 1983); Gardner v. United States, 184 F.Supp.3d 175, 183 n.15 (D.Md. 2016) ("Where the viability of a claim turns on the defendant's mental state, it is generally not enough to conclusively aver that the defendant had the requisite mental state."). Broadaway's unsubstantiated allegations that she was refused medical care and that Jalloh was aware of the refusal are insufficient to state an Eighth Amendment claim for denial of medical care.

Furthermore, Broadaway's medical records—portions of which Broadaway attached to her Complaint—contradict her allegations that she was denied medical care and received inadequate treatment. As previously discussed, Broadaway received antibiotics on April 5, 2019 to treat insect bites. When Broadaway's condition worsened, she was transported to the hospital for an emergency procedure. Upon discharge, Broadaway was housed in MCIW's infirmary, where she received pain medication and wound care. Moreover, Broadaway's medical records do not indicate that she was in distress during her recovery.

At bottom, Broadaway's medical records indicate that she received a prompt diagnosis and antibiotic regimen, referral for emergency treatment, and adequate post-surgery care. Aside from Broadaway's conclusory allegations, there is no evidence that MCIW's medical staff "posed a pervasive and unreasonable risk of constitutional injury" to Broadaway by refusing to treat her or doing so incompetently. See Shaw, 13 F.3d at 799.

In the absence of a constitutional injury, Broadaway cannot establish Jalloh's knowledge or tacit authorization of the alleged injury. The Complaint fails to state an Eighth Amendment claim for denial of medical care as to Defendant Jalloh in her supervisory capacity and must be dismissed.

## III.   CONCLUSION

For the above reasons, the Court will grant Jalloh's Motion to Dismiss (ECF No. 10). The Court will also dismiss the Complaint as to Defendant Dr. Greenway. A separate Order follows.

Entered this 20th of May, 2020.

_____/s/_____
George L. Russell, III
United States District Judge